IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

  Plaintiff,

vs.                  No. CR 04-2248 MV

DARRYL MELVIN MARTINEZ

  Defendant.

## AMENDED MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Exceptions to Presentence Report and Sentencing Memorandum and Supplemental Sentencing Memorandum*, filed August 10, 2005 and August 11, 2005 respectively **[Doc. Nos. 41 and 42]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, ruled at Defendant's sentencing hearing that the four-level use of a dangerous weapon enhancement pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2A2.2(b)(2)(B) did not apply and that Defendant's advisory Guidelines sentence would be reduced pursuant to *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). The Court now sets forth the basis for its prior ruling in this Memorandum Opinion.

## BACKGROUND

On May 9, 2004, a day of fishing ended tragically in a motor vehicle accident on the Nambe Indian reservation. Defendant was the driver of one of the motor vehicles involved in the accident. Before the accident, he and his friend, Nathan Sanchez, had spent the day fishing and drinking. At the time of the accident, Defendant was driving his Chevy Blazer west on Nambe Highway towards San Ildefonso. In his post arrest statement, Defendant reported that he must

have reached down for something inside the car and took his eyes off the road.  Mr. Sanchez tried to pull the steering wheel to the right.  The next thing Defendant remembers is the car rolling over onto the roof and not being able to climb out.  Defendant admitted that he had been drinking the evening prior to the accident and again on the morning of the day of the accident.  Blood alcohol results revealed that Defendant had 0.17 gms/100 ml alcohol concentration, over twice the legal limit.

The victim, Andy Lujan, had to be removed from his pickup truck and transported by ambulance to the hospital.  From the accident, Mr. Lujan suffered two broken ribs, two shattered knees, a fractured right foot, a fractured left hand and bruising all over his body.  Mr. Lujan's doctor advised that he might lose his right leg and that it would be at least a year before he could walk again.

A one count sealed indictment was filed charging Defendant and Mr. Sanchez with assault resulting in serious bodily injury and aiding and abetting, pursuant to 18 U.S.C. § 113(a)(6), 18 U.S.C. § 1153, and 18 U.S.C. § 2.  Defendant pleaded guilty to assault resulting in serious bodily injury before a Magistrate Judge on April 25, 2005.  On that same day, Defendant also submitted a statement of acceptance of responsibility.

In his first Sentencing Memorandum, Defendant argued that the four-point enhancement for alleged use of a dangerous weapon pursuant to U.S.S.G. § 2A2.2(b)(2)(B) was not justified.  Defendant also asserted that, in light of the *Booker* decision,  he should be sentenced based on a consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

The Court held Defendant's sentencing hearing on November 9, 2005.  At the hearing, the Court found that, because Defendant had no intent to cause injury with his truck, he was not

using his truck as a dangerous weapon within the meaning of U.S.S.G. § 2A2.2(b)(2)(B); therefore, the four level enhancement under U.S.S.G. § 2A2.2(b)(2)(B) was not applicable. After subtracting four levels from Defendant's total offense level, the Court sentenced Defendant outside the advisory Guidelines range pursuant to *Booker*.

## **DISCUSSION**

In *Booker*, the Supreme Court held that the Federal Sentencing Guidelines ("Guidelines") violated the Sixth Amendment. To remedy the constitutional problem, the Court excised 18 U.S.C. § 3553(b)(1), the provision of the Sentencing Reform Act ("SRA") that made the Guidelines mandatory, along with the appellate review provisions of 18 U.S.C. § 3742(e) and any cross-references to section § 3553(b)(1). Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences." *United States v. Trujillo-Terrazas*, 405 F.3d 814, 819 (10th Cir. 2005). Thus, "while the Guidelines still exert gravitational pull on all sentencing decisions ... district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." *Id*. Further, the sentencing factors set forth in § 3553(a), "which the mandatory application of the Guidelines made dormant, have a new vitality in channeling the exercise of sentencing discretion." *Id*.

In all cases, to determine a reasonable sentence, this Court first will determine the appropriate advisory Guidelines range examining departure arguments and factual objections to the Presentence Report ("PSR"). The Court then will analyze whether, under *Booker*, Defendant merits a sentence outside of the advisory Guidelines range.

**I.      Advisory Guidelines Range**

The PSR assigned Defendant a base offense level of 14 pursuant to U.S.S.G. § 2A2.2(a). This guideline addresses the crime of aggravated assault.  The PSR also assigned Defendant a four-level enhancement for a special offense characteristic pursuant to U.S.S.G. § 2A2.2(b)(2)(B), which provides: "If a dangerous weapon (including a firearm) was otherwise used, increase by **4** levels."  In addition, the PSR assigned Defendant a five-level enhancement for a special offense characteristic pursuant to U.S.S.G. § 2A2.2(b)(3)(b), which provides for an additional five-level enhancement if the victim sustained serious bodily injury.  Defendant does not contest this five-level enhancement.  With these enhancements, the PSR determined that the adjusted offense level was twenty-three.  With a three-level adjustment for acceptance of responsibility, the PSR's calculation of Defendant's total offense level was twenty.

**II.     Enhancement for Use of a Dangerous Weapon Pursuant to § 2A2.2(b)(2)(B)**

Pursuant to U.S.S.G. § 2A2.2(b)2(B), the base offense level for aggravated assault may be increased by four levels "If a dangerous weapon (including a firearm) was otherwise used." Application Note 1 to U.S.S.G. § 2A2.2(b)2(B) states that "'dangerous weapon' has the meaning given that term in § 1B1.1, Application Note 1, and includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such instrument is involved in the offense with the intent to commit bodily injury." Application Note 1 to U.S.S.G. §1B1.1 defines "dangerous weapon" as "(i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument . . . ." As Application Note 1 to U.S.S.G. § 2A2.2(b)2(B) makes clear, a car may be considered a "dangerous weapon" if it "is involved in the offense with the intent to commit bodily injury."

Although the Tenth Circuit has not addressed the application of U.S.S.G. § 2A2.2(b)2(B) in an assault case arising out of driving while intoxicated, a factually similar case has been considered by the Ninth Circuit in *United States v. Dayea*, 32 F.3d 1377 (9th Cir. 2003). In *Dayea*, the Ninth Circuit addressed the issue of whether operating a vehicle while intoxicated constitutes using a dangerous weapon for purposes of §2A2.2(b)(2)(B). In *Dayea*, the defendant had been drinking all day. At 9:00 p.m., he crossed the center line of the highway in his pickup truck and struck an oncoming Ford Taurus, occupied by four adults and two children. Two of the occupants sustained injuries from the collision. The defendant then collided with an oncoming Chevrolet Blazer, whose occupant died 10 minutes after the collision. Blood tests showed that

the defendant had a blood alcohol level of 0.15% two hours after the collisions. The defendant pleaded guilty to one count of involuntary manslaughter and one count of aggravated assault resulting in serious bodily injury.

The district court applied the four-level enhancement under §2A2.2(b)(2)(B), on the ground that the defendant used a dangerous weapon in the commission of the offense. The Ninth Circuit found this adjustment unauthorized, because the defendant did not "use" a dangerous weapon within the meaning of the Guidelines. First, the Ninth Circuit found that the definition of "dangerous weapon" is expansive, and "there is no question that a motor vehicle may qualify as a dangerous weapon." *Id.* at 1379. Because of the expansive definition of "dangerous weapon" under the Guidelines, the Ninth Circuit explained that "it cannot be that §2A2.2(b)(2)(B) applies any time an object capable of serious injury (i.e., a 'dangerous weapon') is 'used' during an assault." *Id.* at 1380. Rather, the Ninth Circuit concluded that "an upward adjustment under §2A2.2(b)(2)(B) is authorized only when a defendant used an instrument capable of causing serious bodily injury with the intent to injure his victim." *Id.* In the case before it, the Ninth Circuit found that the defendant "had no such intent; despite the horrible consequences of his driving, he was not using his truck *as a weapon.*" *Id.* The Ninth Circuit further found that the fact that the defendant "was intoxicated does not alter our conclusion, because it does not alter Dayea's purpose in using his truck." *Id.* at 1381. The Ninth Circuit explained:

> Unquestionably, driving while intoxicated is a reckless and terrible thing to do. For that reason, a drunk driver may be subject to criminal charges for injuries he inflicts, or for the very act of driving while intoxicated. But the adjustment required by §2A2.2(b)(2)(B) is for using a weapon; that is, for using an object capable of causing serious injury with the intent to injure with it. No matter how negligently or recklessly Dayea drove his truck, he simply was not using a dangerous weapon within the meaning of §2A2.2(b)(2)(B) because he had no intent to injure with his truck.

*Id.* at 1381. Thus, the Ninth Circuit held that "when a motor vehicle is involved in an aggravated assault, a district court may not add four levels pursuant to U.S.S.G. §2A2.2(b)(2)(B) unless the defendant used the vehicle with an intent to injure with it." *Id.* Because the district court found only that the defendant's conduct was reckless, not intentional, the Ninth Circuit vacated his sentence.

This Court adopts the sound reasoning of *Dayea* and finds that, under U.S.S.G. § 2A2.2(b)2(B), where a car is involved in an offense to commit bodily injury, the car is not considered a dangerous weapon unless there was a specific intent to commit bodily injury.[1] This conclusion is supported by comparing the language of the Federal statute that Defendant was indicted under and the sentencing guideline provisions for assault crimes.

Defendant was charged with a crime under 18 U.S.C. § 113, which sets forth a list of seven different types of criminal assaults. Defendant pleaded guilty to 18 U.S.C. § 113(a)(6), which provides the following punishment for a defendant guilty of a assault: "Assault resulting in serious bodily injury, by a fine under this title or imprisonment for not more that ten years, or both." Assault under 18 U.S.C. § 113 (a)(6) is considered a general intent crime. *See United States v. Benally*, 146 F.3d 1232, 1237 (10th Cir. 1998). Alternatively, 18 U.S.C. § 113(a)(3) provides that a defendant found guilty of assault shall be punished as follows: "Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by a fine

---

[1] This Court is aware that in *United States v. Jones*, 332 F.3d 1294 (10th Cir. 2003), the Tenth Circuit, in a footnote, did not read U.S.S.G. § 2A2.2(b)2(B) to require specific intent to use the dangerous weapon to cause injury. However, the *Jones* discussion of this issue was dicta; therefore, this Court is not bound by the that decision. *See Nephew v. City of Aurora*, 766 F.2d 1464, 1466 (10th Cir.1985).

under this title or imprisonment for not more than ten years, or both." Assault under 18 U.S.C. § 113 (a)(3) is considered a specific intent crime. *See United States v. Abeyta*, 27 F.3d 470 (10th Cir. 1994). An examination of these two statutory provisions is instructive because the language of the relevant sentencing guidelines almost exactly tracks the language of the specific intent crime of assault under 18 U.S.C. § 113 (a)(3).

Specifically, Application Note 1 to U.S.S.G. § 2A2.2(b)2(B) provides that a dangerous weapon "includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such instrument is involved in the offense **with the intent to commit bodily injury**" (emphasis added). This language is almost exactly the same as the following 18 U.S.C. § 113(a)(3) language: "Assault with a dangerous weapon, **with intent to do bodily harm** . . . (emphasis added)." Just as punishment for assault under 18 U.S.C. § 113 (a)(3) requires evidence of specific intent, so does sentencing under U.S.S.G. § 2A2.2(b)2(B) also require evidence of specific intent.

Therefore, the issue becomes whether or not Defendant had the specific intent to commit bodily injury at the time of the offense. The Government did not challenge Defendant's assertion that he did not specifically intend to commit the crime with which he was charged. This Court finds that Defendant had no specific intent to cause injury with his truck; therefore, the four-level enhancement pursuant to U.S.S.G. § 2A2.2(b)2(B) is not applicable.

Accordingly, Defendant's total offense level without the enhancement is sixteen, Zone D. The resulting advisory Guidelines range is twenty-one to twenty-seven months.

### III.     Imposition of Sentence

After determining Defendant's advisory Guidelines range, the Court moves to the imposition of sentence.

Pursuant to *Booker*, this Court has crafted a sentence that takes into consideration the serious characteristics of the offense, the need to protect the public, and the need to make restitution. Defendant is to serve the equivalent of twenty-one-month term of imprisonment. However, Defendant shall serve his sentence as twenty months of home confinement and one month of intermittent incarceration in prison. The Court also imposes on Defendant a five-year term of probation. The prison term is to be served within the five-year term of probation. Since the Sentencing Guidelines do not allow a Zone D offense to be satisfied by a period of home confinement, this Court will explain, pursuant to the principles of *Booker*, why a sentence outside of the Sentencing Guidelines is warranted in this case.

When determining whether a non-Guidelines sentence is appropriate, the Court considers the sentencing factors set forth in 18 U.S.C. § 3553(a). For ease of explication, the Court will group these considerations into five categories: the nature of the offense, the history and character of the defendant, the needs of the public and any victims of the case, the need to promote respect for the law and provide just punishment, and the advisory Guidelines range.

### A. The nature of the offense

Defendant pleaded guilty to assault resulting in serious bodily injury. The offense conduct involved an automobile accident that occurred while Defendant was intoxicated. As a result of the accident, the victim, Mr. Lujan, suffered extensive injury to his ribs, knees, right foot, and left hand. Defendant did not intend to use his automobile to injure Mr. Lujan. From the beginning, the Defendant was cooperative and extremely remorseful about the injury he caused. He was

taken to the hospital after the accident where the police immediately took a statement from him in which he acknowledged what he had done. Defendant continued to express remorse and concern for the victim when he was later interviewed by an agent with the Bureau of Indian Affairs. In his acceptance of responsibility statement, Defendant stated that he hoped the victim was okay and could forgive him. At his sentencing hearing, Defendant again expressed remorse for what he had done.

### B.     The history and character of the defendant

Prior to the instant offense, Defendant had no prior record and no convictions countable under the guidelines. Defendant's criminal conduct in this case was a direct result of a quasi-medical problem: alcoholism. Defendant is a thirty-nine year old Navajo man who admits that he has suffered from alcohol abuse since he was fifteen-years old. In 1985 Defendant participated in an alcohol treatment program. More recently, he completed a three-month residential treatment program at New Moon Lodge in San Juan Pueblo, New Mexico. While he was in the program, he accumulated a total of twenty-six hours of community service and served as the resident president. Defendant continues to work on issues surrounding his alcohol abuse.

Defendant's wife, who he has been married to for over seventeen years, describes Defendant as a good husband and father. He and his wife have three children together. Defendant reports that his father was an alcoholic who was verbally abusive to his mother and their children. However, Defendant states that his father is sober now and has been sober for over twenty-seven years. He now has a good relationship with both of his parents.

Despite these issues, Defendant has lead a relatively commendable life. Defendant served in, and was honorably discharged from, the United States Army. Since 1990, Defendant has been

employed by the Federal Government's National Park Service as a heavy equipment operator in the Bandolier National Forest. His job requires a lot of training and experience and there is no indication that Defendant has ever allowed his alcoholism to interfere with his employment. In fact, Defendant's employer describes him as reliable and hard working and has stated that, unless Defendant is incarcerated, Defendant should be able to keep his job.

This Court takes notice of the fact that unemployment rates are high in the state of New Mexico, particularly on the reservations, where unemployment rates can rise to double the rates in the rest of the country. *See* JOE GARCIA, PRESIDENT OF THE NATIONAL CONGRESS OF AMERICAN INDIANS, FOURTH ANNUAL STATE OF INDIAN NATIONS ADDRESS, http://www.ncai.org (Feb. 2, 2006). Many of the conditions of supervised release and probation are aimed at getting defendants to get into the habit of going to work, getting them trained to be able to obtain employment, and to be able to secure employment. Once defendants obtain employment, it is more likely that they will stay out of trouble and become productive members of society. These goals will not be served if this Court sentences Defendant to a lengthy incarceration period since, if he incarcerated, he is likely to lose his job without the possibility of recovering it.

### C. The needs of the public and any victims of the crime

As previously stated, if Defendant is incarcerated he will likely lose his job and be unable to get it back. Defendant's community would be ill-served by turning Defendant, who is currently a productively employed member of society, into an unemployed convict who has been exposed to the criminal elements present in a prison.

In addition, the victim in this case appears to have incurred approximately $50,000.00 of uninsured medical expenses. If Defendant is incarcerated for a lengthy period of time, he will be

unable to make restitution to the victim. However, if he is placed on home confinement, instead of serving time in jail, Defendant will be able to continue his job, which will allow him to make restitution payments.

### D. The Need to Promote Respect For the Law and Provide Just Punishment

Even without a lengthy prison sentence, Defendant's sentence will be harsh. He will be subject to constant scrutiny while under a five-year term of probation. He will be under home confinement for the lengthy period of twenty-one months. During that time he will not have the freedom to enjoy everyday life. He will be confined to his home except to go to work, attend alcohol counseling, or attend to medical emergencies. A substantial sum of the hard-earned money that he makes will have to be given to the victim as restitution. This will require financial sacrifices by Defendant and his family. Even when the period of home confinement is complete, Defendant and his family may not be able to enjoy activities such as going out to dinner or going on vacation because of the financial sacrifice that will be required in order to make restitution.

### E. Advisory Guidelines

Defendant's total offense level without the enhancement is sixteen, Zone D. The resulting advisory Guidelines range is twenty-one to twenty-seven months. After giving serious consideration to the advisory Guidelines, the Court finds that a sentence pursuant to the Guidelines will not further the objectives of sentencing set forth in § 3553(a). Defendant is a productive member of the community, who unfortunately has a problem with alcohol abuse, which he is working to conquer. A term of twenty-one months in prison will cause him to lose his job, thus removing him from the productive realm of society and making it impossible for him to provide restitution to the victim. Although this Court finds that a twenty-one-month term of

-12-

imprisonment, as suggested by the guidelines, is appropriate, this Court believes it will be more beneficial to the victim and the public if Defendant is required to serve the majority of this term in home confinement, rather than in prison. Since the Guidelines do not allow a Zone D Defendant to serve his term of imprisonment in home confinement, this Court finds it necessary to sentence outside the Guidelines in this instance. This will allow the Court to sentence Defendant to the full twenty-one months through home confinement and one month in jail, while allowing him to keep his job and remain a productive member of society. The time spent in jail and in home confinement will serve the purposes of deterrence and just punishment as it will constitute an almost complete limitation on Defendant's freedom to lead a normal life. This is a reasonable sentence under *Booker*, since "If the Supreme Court's ruling in *Booker* does anything, it gives a defendant hope that where the factors listed in Section 3553(a) warrant a lesser sentence than the Guidelines recommend, and where the Guidelines' goal of uniformity is not advanced, a judge can depart from the sentence recommended by the Guidelines." *United States v. Perez-Nunez*, 368 F. Supp. 2d 1265, 1270 (D.N.M. 2005). That is the case here. I am convinced that incarceration for twenty-one to twenty-seven months will be detrimental to all involved and that the sentence of one month imprisonment, twenty months home confinement and five years probation is a more appropriate sentence.

## **CONCLUSION**

At the sentencing hearing on November 9, 2005, the Court found that the enhancement for use of a dangerous weapon pursuant to § 2A2.2(b)(2)(B) was not applicable. After considering the Sentencing Guidelines, the *Booker* decision, and 18 U.S.C. § 3553(a), the Court sentenced Defendant to twenty months of home confinement, five years of probation, and one

month of incarceration in jail, to be served over the five year probation period. The Court also ordered Defendant to pay restitution to the victim. In an Order, dated February 7, 2006, this Court set the restitution amount at $12,037.00. Additional special conditions are set forth in the judgment. For the foregoing reasons, and the reasons stated in open court, this sentence is reasonable under all of the circumstances.

This Opinion and Order shall be appended to Defendant's judgment and commitment form.

It is thereby **ORDERED** that Defendant is sentenced to twenty months of home confinement, five years of probation, and one month of incarceration in jail, to be served over the five year probation period. Defendant must also pay restitution as set forth in this Court's Order, dated February 7, 2006.

**DATED** this 24th day of February, 2006.

        (Electronically signed)
        MARTHA VÁZQUEZ
        CHIEF UNITED STATES DISTRICT JUDGE

Attorney for the United States:
Samuel L. Winder

Attorney for Defendant:
Judith A. Rosenstein